3-09-0272 People of the State of Illinois Appellee by Robert Hanson v. Jared Milian Talent by Mike Walsh Mr. Walsh, you may proceed. Good afternoon. Good afternoon. This is the Board Council for the State of Illinois. We're presented with a case where on February 11, 2006, a young man named Stephen Jenkins was shot in Joliet, Illinois. My client, Mr. Milian, was indicted along with a co-defendant by the name of Motley. During the issues leading up to the trial, there was a request for a separate trial made by Mr. Milian's trial attorney. During the ensuing discussion of that in argument, the ruling ended up coming down that Mr. Milian was not going to have a separate trial. The argument that I believe should have been made and was not either fully comprehended by the trial judge was that we're in a slippery slope when we get into joint trials of individuals whose defenses, although maybe not in the classical antagonistic form, are though in and of themselves inconsistent with each other and leads a single jury to be placed in a position of wondering, well, if we don't believe the co-defendant, Mr. Motley, as he has argued, he was defending himself or had a belief that he was defending himself, well then we're certainly not going to believe the version here that Mr. Milian is simply an innocent participant, which basically is his argument. So, although the state is simply, and it's always easy to say, well, they're not antagonistic, but the issue is does the, are there circumstances in the case that requires a severance just for the fairness to an individual who is saying, I didn't shoot anyone, I didn't have the gun, the allegation being made is that he may have handed the weapon to the ultimate shooter at some point, but that he's saying I did not know what this person's plan was, I did not know what his intention was, I did not know what his design was when I handed him the weapon. As I'm sure the court, I know from prior appearances here, has had an opportunity to read the briefs and review the record, I'm not going to belabor what the facts in the issue of the severance. It's my client's position, and I believe this is one of those cases that kind of slips through the cracks in the severance issues versus joinder of trials. Had the severance been ordered, we may have, there may be a different result, I don't know, but we are presented with a situation where this young man is involved in a trial where his co-defendant, the alleged shooter, and apparently all the witnesses say he's the shooter. He is stuck sitting there, and now this person's going to get up and say, yeah, I did do this, and here are the reasons why. And once that jury doesn't believe Motley, the co-defendant, Mr. Millian is placed in a terrible position because he's now sitting there saying, well, whatever may have happened, I'm not responsible. We believe and have argued that the severance should have been granted, and perhaps it should have been argued more strenuously by his trial counsel. And I believe that the court should order a new trial based on the arguments that were presented. The state's probably, I anticipate, is going to get up and say, no, you're wrong, and give you the reasons that it's given already in its brief. If you look at the case itself, and go now past the issue of the severance, you've got evidence from these multiple individuals who claim to be present during, if not the entire incident, but parts of the incident. And you have different versions of things. You've got a witness named Bolden. You've got a witness named Marshall. You've got a witness named Mitzelfeld. Hopefully I've not mispronounced that, but I have a feeling I have. You've got these witnesses, and they all kind of give different versions of what happened. But they also significantly contradict each other about important things. Marshall contradicts Bolden about certain telephone conversations. Mitzelfeld contradicts Bolden about whether there was ever a plan to do anything in the form of a shooting. Edward says, I saw someone pass the gun, but I didn't hear anything. But then you have other people saying they did hear certain things. You've got Bolden, who has made inconsistent statements to law enforcement. And you've got Bolden and Edwards, whose versions are contradicted by Marshall. This case, as it's presented by the state, and the facts as they presented them against Mr. Million, was that there was some plan that somehow my client took part in the plan, that he furthered the plan by handing the weapon to this individual. But the facts are so different from each witness's mouth, that what we really have here is him handing the gun to Mr. Motley after Jenkins leaves it, and Mr. Jenkins is the deceased, after the deceased leaves it in a residence, and the weapon is taken from the hiding place that Mr. Jenkins had placed it. The courts, your honors, and a lot of other appellate courts are presented with these, for lack of a better term, accountability murders many times. And there's lots of case law, and the brief is referred in numerous cases, not only for the defense here, but the state has referred the court to other things in other cases. But in this situation, we're presented with a very slim, in my mind, set of facts that involves this young man in such a serious thing that he received a 35-year sentence. And it seems that, and it goes back to the entire argument that I just made about the severance, there's really not much here against this young man, and we're asking the court to find that the state had not met its burden, but when you look at the facts of the case and the very slim number of things that the state has introduced against him, and when you compare that with the severance issue, we're asking that the court either one, overturn the conviction entirely, or order a new trial, finding that Mr. Millian's right to a separate trial had been denied. Lastly, there's an issue of a Batson ruling. Clearly, this is one of those where either the state, in my mind, may have dropped the ball, or the judge may have dropped the ball in the procedure that one follows when there's a Batson claim. I don't claim to be an expert on how these things should be done, but if there's a Batson issue raised, it's the defendant's position that the judge has an obligation at that point to determine is there a viable Batson issue raised, and if so, state, please tell me the reason, why you're excusing the only African-American male who's been called as a prospective juror in this case. I believe that there were some... There were other African-American males that were called and excused for scheduling difficulties. That's right, but I don't... Without objection by the judge. I don't disagree with you, but my recollection is that there was a... These were African-American females who had scheduling... As you said, scheduling conflicts or whatever term one might apply to it. We believe that the proper way to have done this was to say, state, please tell me the independent basis for you excluding this, the only African-American male prospective juror, other than just we want to get rid of him. Well, let's talk about the appropriate procedure to raise a Batson challenge. Did Mr. Millian's attorney claim that there was a Batson violation? Well, one of the issues that we raise is that perhaps he should have. Why isn't that issue forfeited? Because you're attempting to bootstrap it onto Mr. Motley's and counsel's objection, and there's case law that indicates unless Millian's attorney made the objection, it's forfeited. Well, one of the... That's a point well taken. It may be in effect. Mr. Spurlock, who was Mr. Motley's lawyer, had voiced the objection, and most of the argument concerning that issue had been between himself, the state, and the court. Now, perhaps that's where Mr. Millian's attorney may have dropped the ball by not at least chiming in, I'll join in the objection, which would take all of ten seconds and preserve the record and would have eliminated Your Honor's pointed reference to, well, did you waive this? And as I said, it may go to the issue of the ineffectiveness to not join in that. I know the court has reviewed these debriefs, and I know that I'm getting my 15 minutes is going to the end, so I do want to preserve a couple of minutes at the end so that I might be able to respond to the state unless the court has any other questions it may want to pose. You have full time for a reply. I'm sorry? You have full time for a reply. Okay. So if you want to continue... No, that's fine, unless the court has some questions to ask. I have a couple of questions, Mr. Watson. Yes, Your Honor. Are you aware of any Batson-type cases that make a distinction based on gender? I have to honestly say no. And doesn't Batson require a pattern? Well, it does require a pattern, and that presents the interesting, I guess, issue here is by simply... just for argument's sake that the state didn't have a good reason to ask this prospective juror to step aside, other than they just didn't want an African-American male on the jury and looked and saw if there are any others, so let's get rid of this one. Assume that. Well, do you need to have the pattern? I mean, obviously one is not a pattern, but one when it's the only African-American male certainly raises an eyebrow and makes one step back and say, why did you excuse this gentleman? Counsel, you have 15 minutes. Thank you. I have one other question. Yes. Your second issue, the issue on the merits, so to speak. Yes. There was testimony that was inculpatory of Mr. Millian. Is that correct? There was some testimony from different individuals of his involvement in this. However, some of that is contradicted by other individuals who say, no, that isn't what happened. And isn't that precisely what's supposed to be dealt with by the jury to weigh the evidence, assess the credibility of the witnesses, and resolve those kinds of inconsistencies in testimony? That's generally why they're there, Judge. Is there a way that we can go the other way on that without substituting our judgment for that of the jury? Perhaps that is what my client is arguing here is that perhaps the court may take a second look at this and say, there's not enough evidence here for a finding. And as I said, for me, it goes back to the severance issue. Because now, since he's being tried at the same time with Mr. Motley, he's being denied the right to a fair trial. Because although technically not antagonistic, in my mind, they are inconsistent defenses. And that the jury, when presented with various jury instructions that in and of themselves are inconsistent, the jury is left to wonder, now what do we do? We don't believe this guy. So we're just going to find both of them guilty. Thank you. Thank you, Mr. Walsh. Mr. Hanson, you may respond. Good afternoon, Your Honors. May it please the court and counsel, regarding the severance issue, I will largely rely on my brief, but I will just give you a few comments here that are admittedly somewhat redundant, what's in the brief. The point is, and I'm not going to cite any authority I haven't already cited, the authority just does not support the defendant on this point. There were no antagonistic defenses. The defendant's defense was the presumption of innocence, and the people couldn't prove him guilty beyond a reasonable doubt. The co-defendant's defense was self-defense. The co-defendant testified favorably for the defendant. I detail this in my brief. Jointly indicted defendants are usually to be jointly tried. There must be actual hostility between them in order to entitle them to a sentence. Severance, that's the Mischke case. Severance is within the judge's discretion. There was no abuse of discretion here. You do not need a severance. I keep saying sentence. You do not need a severance when the defenses are merely contradictory, but not antagonistic. That's the Wright case. Rice, rather. See, the Lovelady case also, again, a case that I cite, said there were no antagonistic defenses, where the defendant in that case said he innocently gave a gun to the co-defendant. The co-defendant said he was shooting the victim in self-defense. That, according to Lovelady, did not link the shooting back to the defendant. In Murphy, a case, again, I cite in my brief, the alibi of the co-defendant was simply contradictory, with the defendant's testimony having innocently been with the co-defendant at the scene. Again, no severance was called for there. We make the point in our brief further, Your Honor, if there was any possible error, as harmless error, as the proof was indeed overwhelming, as I go on for about 15 or 16 pages in my brief to say. The judge denied the severance, looking at the statement of an inmate that the co-defendant supposedly implicated the defendant, saying, I'm not admitting that statement. The trial was nothing but favorable testimony from the co-defendant for the defendant. He said he shot, he himself shot the victim in self-defense. He said he never commented, he said the defendant never commented to Mr. Marshall, which Marshall testified, about killing the victim. In other words, he contradicted a witness, Mr. Marshall, who was adverse to the defendant. He said he asked for the gun from the victim without saying he was going to use it to shoot the victim, contradicting other witnesses who said that. He said that the defendant fled and said nothing after the shooting. He said, contradicting other witnesses, the defendant did not kick the victim's body. The co-defendant, by his testimony, and you can see this ad nauseum in the case, Your Honors, he tried to make the defendant look good. As to the first issue, proof beyond reasonable doubt, Your Honors, we have the Collins standard, whether doing the evidence in the light most favorable to the prosecution, any reasonable trier of fact, could have found it. Your Honors, you don't need active participation for accountability. That's the Reeves case. You're accountable under Reeves if you share a criminal intent, there's a common criminal purpose, you don't need words of agreement, there's a common design, which is inferable from the evidence. It can be, accountability can be based on evidence that the defendant attached himself voluntarily to another bent on an illegal act. Accompanying the principle to the scene with knowledge of the commission of a crime with any affirmative contact between the two indicates shared criminal purpose. That's the Turner case. The earlier case I cited was Reeves. Again, these are all cases in my brief. Mere presence is admittedly not enough, but there was active participation here as detailed in the brief. Yes, ma'am. Do you think the statement, once Mr. Jenkins was on the ground, two witnesses said that they heard the defendant direct modeling to shoot him again to make sure he was dead? There was that evidence, yes. Do you think that act alone, if it happened, is enough to make Mr. Millian accountable? I don't know if it is, but it's wonderful proof for the prosecution. It certainly, you know, you look at all the evidence, the fact that he handed him the gun, that there's evidence that the co-defendant said, give me the gun so I can shoot him. When you look at the evidence that the defendant was earlier beaten by someone, probably not the victim, and was ticked off at the victim, that the victim had fired many shots in the air, that there's all this evidence of the defendant, co-defendant, saying something to the effect of, quote, this just ain't right. All of that together, along with shoot him again or hit him again or make sure he's dead. In my mind, I tried to separate the two acts because one act that would render him accountable, in theory, was handing the gun to modeling, knowing that he intended to harm the victim. That's a good piece of prosecution evidence. Of course, the theory was he didn't know Motley was going to shoot him. And Motley testified he was acting in self-defense. So if we excise all that testimony and just begin with the moment of time, shoot him again to make sure he's dead, it's difficult to claim you're defending yourself when a man is prone to get ground, laying on the ground. And there was another shot fired, and I'm just wondering, that little remark, was that enough alone from that moment in time forward to render him accountable? Well, the shooting had already happened by that time, so that might be a bit tardy. But there were shots fired after? Well, there were shots fired after that, too. So it's very favorable evidence to the prosecution. Without giving it any thought, I would say that would be a basis for a jury to find him guilty under the common standard considering the evidence in the light most favorable to the prosecution, any reasonable prior effect. But there was indeed so much more. That was indeed kind of the cherry on the sundae. You don't know which shot ultimately caused the demise? I don't think we do, no, no, Your Honor. So you're saying you cannot infer back to knowledge from that statement? Oh, it helps. It does nothing but help the prosecution. No, but in answer to Justice Wright's questions, we've excised everything else, and so we only have that statement that's been testified to as coming from the defense. I think under the common standard that's probably enough, but my overwhelming point is you shouldn't excise everything prior to that because there's just so much evidence of accountability and of Mr. Motley and Mr. Millian being in this together, being upset with the victim and deciding they were going to go there and do something to him. Your Honors, I will not argue any more of the facts of the case. I do so in my brief, pages basically 5 through 15. The facts are there, and my point is, Your Honors, that the evidence in this case was overwhelming, overwhelming. But in any event, if you say I'm being an overly enthusiastic advocate under the common standard, which is greatly favorable to the prosecution, it was certainly adequate. As to the third issue, the Batson issue, again, the case law is all there. The defendant has to establish a prima facie case in the first instance. Heard, a case we both cite, sets out seven factors. Heard found the absence of a prima facie case was not contrary to the manifest way to the evidence, and that's the standard you're dealing with here on appeal. Rejecting the defendant's argument just on the basis of the prosecutor challenging five black veneer persons. The mere number of blacks challenged without more is not a prima facie case. The Davis case is to the same effect. Williams said it's not dispositive as to a prima facie case if the defendant and the excluded veneer man were of the same race. The defendant's claim is based only on the peremptory challenge of one black male. The prosecutor struck the juror in seat 20. Indeed, there's very little of a record here for your honors to fully decide the makeup of everybody on the jury, and, of course, the defendant has the obligation to present an adequate record, so any inference to the contrary should favor the people, not the appellant who didn't provide the record. The prosecutor also struck five other jurors and two alternates with no complaint. There's nothing in the record regarding their race. The defendant said that's the extent of the record on this point. There was only one black male in the veneer. Again, no more record beyond that. The judge said that was not enough. The judge did not say, I'm sorry, the defendant did not say this was the only black, just this was the only black male. The state's attorney offered to state the reasons for the challenge. The judge said no need. The state's attorney then remarked the defendant, in fact, was of mixed race, whatever that might mean. The judge asked if the defendant had anything more than the prosecutor striking one black, and the defense counsel said no. Then counsel said something interesting. Batson was new law. Well, maybe we'll make another new law. I submit, Your Honor, as defense counsel knew, he was on tenuous legal grounds. The judge made many findings helpful to the prosecution on this issue. He said there were multiple African Americans or blacks on the veneer. He said that two were not selected by joint agreement of the people and the defendant. He said it was not enough for the defendant just to say a black was challenged by the prosecution. She said she did not make a record of the juror's color. That would be overwhelmingly helpful and, indeed, perhaps necessary to Your Honors to decide this case. Then she made a point that's very dispositive here. She pointed out that each defendant was black. The defense attorneys were black. The victim was black. The people's witnesses were black. The two lead detectives who testified were black. This was not a case of black-on-white crime or white-on-black crime. That, I think, is extremely significant. She said the defendant did not raise enough to indicate the people were excluding this one juror on the basis of color. She did not say how many blacks were on the jury or excuse. There's nothing in the record regarding that. And they're set out in the brief. Both are briefs. Only the first and the seventh factors were addressed. The other five were not shown. You won't find anything about them. And the seventh, the color, if you will, of all the parties involved, showed that all the players at trial, as I've just described to you, were black. The Hope case, relied on by the defense, is distinguished at page 25 of my brief. There are 50% of the peremptories were used against the black, 12% of the veneer, with a 100% white jury with a white victim and white officers. In sum, Your Honors, the record here, the defendant's responsibility, does not show how many blacks on the jury there were or what percentage of the people's peremptories were exercised against what black percentage of the veneer. Your Honors, that concludes my comments. Thank you, Mr. Hanson. You're welcome, Your Honor. Mr. Walsh, you may have a slot, if I may for a moment. I would just like to go back to the issue of the severance. And I find it rather, it's kind of unusual for the status that Mr. Motley was Mr. Millian's best witness. Well, the problem is that the jury said, we don't believe him. So Mr. Motley became Mr. Millian's worst witness. Because he, now the jury goes back to that jury room and starts deliberating on these inconsistent defenses and has said, we don't believe what Mr. Motley has told us. So now, Mr. Millian is placed in that terrible predicament where he's saying, I'm not involved in this. And Mr. Motley, the jury is finding that Motley was involved and there was no reasonable basis to believe that this individual was armed or represented a danger to anyone. And as a result, Mr. Millian is prejudiced by the joinder of those two trials. We would ask that your honors consider, if not overturning the verdict, please consider ordering a new trial for Mr. Millian. And if there aren't any other questions, I'm done. I don't believe there are, Mr. Walsh. Okay, thank you. Thank you, counsel, for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue. The court will stand-